[No. 18784-1-II.   Division Two.   May 10, 1996.]

LYDIA KELLER, ET AL., *Appellants*, v. ALLSTATE INSURANCE CO., *Respondent*.

*Duane C. Crandall* and *Roethler, Crandall, Long & O'Neill*, for appellants.

*Douglas F. Foley* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman*, for respondent.

SEINFELD, C.J. — A jury awarded Lydia and Delroy Keller substantially more than Allstate Insurance Company (Allstate) had earlier offered as settlement of their personal injury claim. The Kellers then brought this action alleging that Allstate made the low offer in bad faith and in violation of the Consumer Protection Act (CPA). The trial court found for Allstate and the Kellers appeal. We conclude that the trial court properly considered the

settlement offer in light of the circumstances known to Allstate at the time. Thus, we affirm.

## FACTS

In November 1989, an underinsured motorist rear-ended Keller's Lincoln Town Car. Keller, a 57-year-old registered nurse, injured her neck and knees. She refused offers by the police at the accident scene to transport her to the hospital. Instead, she drove herself home without assistance.

After arriving home, Keller had her husband, Delroy, take her to an emergency medical center. She presented complaints of neck pain. The staff took x-rays and diagnosed her injury as a neck and upper back strain. They then sent her home with a "soft cervical collar" and pain killers.

Two weeks later, on the advice of her attorney, Keller consulted an orthopedic surgeon, complaining of instability in her right knee and pain in her neck and left knee. The doctor found no evidence of cervical spine injury and found her knees to be "tender" but "otherwise normal." Diagnosing Keller's condition as "bilateral knee contusions,"[1] he opined that the pain would subside within six weeks of the accident.

After the accident, Keller also began experiencing pain in her face and jaw. In December 1989, she visited a dentist, who concluded that her jaw was "overclosed."[2] X-rays of the jaw did not reveal any "traumatically induced" conditions. The dentist attributed the deviations he did find to the "natural aging process."

Later that month, Keller began treatment for her back

---

[1] Bruised knees.

[2] When a denture is loaded on soft tissue, the bone underneath is reabsorbed and the upper and lower jaws come closer together, becoming "overclosed." As a result, dentures must be realigned at regular intervals, depending on the rate of bone loss. According to the dentist, Keller, who had worn dentures for 15 years, had never had her dentures realigned.

and jaw pain with a physical therapist. She attended 28 therapy sessions over the next six months and reported improvement in her back condition. The physical therapist noted several times during the course of treatment that Keller's physical discomfort increased with psychological stress.

Four months after the accident, Keller visited a second orthopedist with complaints of pain in her right knee. The orthopedist observed some swelling in both of her knees, the right greater than the left, and diagnosed her condition as bruised knees. X-rays of the knees came back "normal" and "looked quite good." The orthopedist found no instability in the knee caps or injury to the ligaments. The range of movement in both knees was "normal and identical." At the end of the examination, the orthopedist prescribed quadriceps strengthening exercises and invited her to return should she need further consultation or direction. She never sought further treatment from this doctor.

Keller's bills for medical treatment resulting from the accident totaled approximately $3,270. Of that amount, she spent approximately $1,700 on physical therapy.

The Kellers recovered the policy limit of $25,000 from the underinsured motorist's insurance carrier. As this amount did not cover all of the Kellers's damages, in late May 1991 she filed an underinsured motorist (UIM) claim for $10,000 with their carrier, Allstate, and demanded arbitration. Allstate offered to settle for $8,000. Shortly after the Kellers rejected the offer, Allstate, exercising a contractual right to resolve the dispute through litigation, filed a complaint in Cowlitz County Superior Court.

At trial in September 1992, the Kellers made an oral claim for damages of $125,000, the total combined coverage of the underinsured motorist's $25,000 policy and their $100,000 UIM policy with Allstate. The jury awarded the Kellers a total of $75,200 in damages. As $25,000 already had been paid by the underinsured motorist's carrier, Allstate owed them $50,200, plus costs.

On October 5, 1993, the Kellers filed the complaint in this case. They alleged that Allstate had engaged in an unfair trade practice by offering to settle their claim for $8,000, a sum substantially smaller than the amount ultimately recovered at trial. *See* WAC 284-30-330(7). Subsequently, the Kellers twice amended their complaint, adding a claim for tortious breach of the duty to act in good faith and a request for damages for emotional distress and pain and suffering.

The parties cross-claimed for summary judgment. The trial court granted partial summary judgment to Allstate, ruling that the Kellers, as a matter of law, could not recover damages for emotional distress and pain and suffering. It later denied the Kellers's motion for reconsideration.

The remaining issues went to trial on a stipulated record. After a one day trial, the court found that the jury's verdict (1) was not "a fluke or runaway verdict," (2) was the "result of exceptional work by plaintiffs' Counsel," and (3) that Allstate had not acted in bad faith.

On appeal, the Kellers contend that the trial court erred in (1) finding for Allstate because Allstate's $8,000 offer was substantially less than their eventual recovery, and, thus, as a matter of law, it demonstrated bad faith; and (2) denying their motion for summary judgment and granting summary judgment to Allstate on the emotional distress and pain and suffering claim because the CPA is not the exclusive remedy for a claim of insurer bad faith.

I

The Kellers contend that they are entitled to recover their damages for being forced, by Allstate's bad faith, to resort to litigation to recover the true value of their claim. Allstate argues that its settlement offer was reasonable under the circumstances.

An insurer's breach of its duty of good faith represents an unfair trade practice actionable under the

CPA and entitles an insured to recover treble damages and attorney's fees. *See Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855-56, 792 P.2d 142 (1990); RCW 19.86.020, 090. To prevail, a private party must prove among other things that "the defendant's act was unfair or deceptive." *Insurance Co. of Pennsylvania v. Highlands Ins. Co.*, 59 Wn. App. 782, 786, 801 P.2d 284 (1990), *review denied*, 116 Wn.2d 1032 (1991). A violation of WAC 284-30-330 constitutes a per se unfair trade practice. *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520, 7 A.L.R.5th 1014 (1990); *Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 273, 810 P.2d 58, *review denied*, 117 P.2d 1017 (1991).

## A

The Kellers contend that Allstate breached its duty of good faith by compelling them "to . . . submit to litigation . . . to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." WAC 284-30-330(7). Promulgated pursuant to rule-making authority granted by RCW 48.02.060[3] and 48.30.010(2),[4] WAC 284-30-

---

[3]RCW 48.02.060 provides in relevant part:

"(1) The commissioner shall have the authority expressly conferred upon him by or reasonably implied from the provisions of this code.

. . . .

"(3) The commissioner may:

"(a) Make reasonable rules and regulations for effectuating any provision of this code, except those relating to his election, qualifications, or compensation. No such rules and regulations shall be effective prior to their being filed for public inspection in the commissioner's office."

[4]RCW 48.30.010 provides in relevant part:

"(1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section.

"(2) In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter 34.05 RCW, define other methods of competition and other acts and practices in the conduct

330[5] identifies 19 insurance practices found by the insur-

of such business reasonably found by the commissioner to be unfair or deceptive."

[5]WAC 284-30-330 provides:

"The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims:

"(1) Misrepresenting pertinent facts or insurance policy provisions.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

"(4) Refusing to pay claims without conducting a reasonable investigation.

"(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

"(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. In particular, this includes an obligation to effectuate prompt payment of property damage claims to innocent third parties in clear liability situations. If two or more insurers are involved, they should arrange to make such payment, leaving to themselves the burden of apportioning it.

"(7) Compelling insureds to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

"(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

"(9) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made.

"(10) Asserting to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

"(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information.

"(12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

"(14) Unfairly discriminating against claimants because they are represented by a public adjuster.

"(15) Failure to expeditiously honor drafts given in settlement of claims. A failure to honor a draft within three working days of notice of receipt by the

ance commissioner to be unfair forms of competition or unfair or deceptive acts. *Starczewski,* 61 Wn. App. at 272. A violation of this regulation represents a breach of an insurer's duty to act in good faith. *Tank v. State Farm Fire & Casualty Co.,* 105 Wn.2d 381, 386, 715 P.2d 1133 (1986).

RCW 48.01.030 requires insurers to deal with their insureds in good faith.[6] *Kallevig,* 114 Wn.2d at 916. To establish a breach of this duty, a party must prove that the defendant acted unlawfully and in violation of public policy. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 358, 581 P.2d 1349 (1978); *Highlands Ins. Co.,* 59 Wn. App. at 786. An insurer violates its duty to act in good faith when it acts without reasonable justification. *Kallevig,* 114 Wn.2d at 917; *Whistman v. West Am. of Ohio Casualty Group of Ins. Cos.,* 38 Wn. App. 580, 585, 686 P.2d 1086 (1984).

---

payor bank will constitute a violation of this provision. Dishonor of any such draft for valid reasons related to the settlement of the claim will not constitute a violation of this provision.

"(16) Failure to adopt and implement reasonable standards for the processing and payment of claims once the obligation to pay has been established. Except as to those instances where the time for payment is governed by statute or rule or is set forth in an applicable contract, procedures which are not designed to deliver a check or draft to the payee in payment of a settled claim within fifteen business days after receipt by the insurer or its attorney of properly executed releases or other settlement documents are not acceptable. Where the insurer is obligated to furnish an appropriate release or settlement document to an insured or claimant, it shall do so within twenty working days after a settlement has been reached.

"(17) Delaying appraisals or adding to their cost under insurance policy appraisal provisions through the use of appraisers from outside of the loss area. The use of appraisers from outside the loss area is appropriate only where the unique nature of the loss or a lack of competent local appraisers make the use of out-of-area appraisers necessary.

"(18) Failing to make a good faith effort to settle a claim before exercising a contract right to an appraisal.

"(19) Negotiating or settling a claim directly with any claimant known to be represented by an attorney without the attorney's knowledge and consent. This does not prohibit routine inquiries to an insured claimant to identify the claimant or to obtain details concerning the claim."

[6]RCW 48.01.030 provides in relevant part, that " [t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."

■ In their brief, the Kellers contend that a violation of this provision can be established simply by comparing the pretrial settlement offer to the award ultimately recovered at trial, without reference to the circumstances or reasoning underlying the original offer or the ultimate jury verdict. However, at oral argument, they conceded that it might be appropriate for the trial court to consider the facts and circumstances at the time the insurer made the offer. The latter approach is consistent with the concept of bad faith.

> The fact that the insurer is ultimately unsuccessful in its policy defense does not render the insurer liable for bad faith refusal to settle claims provided that the insurers['] actions were reasonable, and the insurer had probable cause to pursue its defense. Therefore, the insurer should not be held liable for extra-contractual damages where there is a legitimate controversy as to whether benefits are due or the amount of such benefits . . . .

15A GEORGE J. COUCH ET AL., COUCH ON INSURANCE 2d (rev. ed.) § 58:1 (1983) (footnotes omitted).

RCW 48.02.060 authorizes the commissioner to make "reasonable rules" and RCW 48.30.010 proscribes "unfair or deceptive acts." To determine whether a defendant acted reasonably, fairly, or deceptively, it is necessary to consider the circumstances surrounding the allegedly improper act. Adoption of a strict number comparison approach would make an insurer strictly liable for damages any time its pretrial evaluation of a claim turned out to be substantially less than the jury's verdict. It would not allow consideration of the reason for the disparity, or require a finding that the insurer's wrongdoing was a cause of the disparity.

■ Admittedly, WAC 284-30-330(7) is one of a few subsections that does not explicitly set forth a reasonableness standard. We believe, however, that such a standard is implicit in the above statutes and in WAC 284-30-330. Most of the 19 unfair practices described in WAC 284-30-330

explicitly require consideration of circumstances. The WAC uses such terms as " [m]isrepresenting," "reasonable," "good faith," "for the purpose of compelling," " [d]elaying," "in order to influence," and "valid reason." A bright line rule making a low settlement offer an unfair practice, notwithstanding the circumstances, would be inconsistent with the above statutes and WAC provisions. Finally, WAC 284-30-330(7)'s reference to compelling litigation "*by* offering substantially less" indirectly suggests an element of willfulness (emphasis added).

For the above reasons, we agree with the *Starczewski* court that "an incorrect denial of coverage does not constitute an unfair trade practice if the insurer had 'reasonable justification' for denying coverage." *Starczewski*, 61 Wn. App. at 273 (quoting *Kallevig*, 114 Wn.2d at 917). The record here contains abundant evidence that Allstate had such reasonable justification for its offer.

Keller's medical records, the affidavit of Allstate's claim representative, and the report from Allstate's expert witness all suggest that Keller suffered minor injuries, calling for relatively limited treatment. The emergency room staff diagnosed a strained back and sent her home with nothing more than a cervical collar and pain killers. The orthopedic surgeon found no evidence of cervical spine injury. The physical therapist suggested that her spinal strain responded positively to physical therapy.

The reports and depositions of the physicians who examined Keller's legs also suggest that her knees suffered only minor trauma in the accident. The two examining physicians found the knees to be normal but for the bruising from the accident. Although Keller claimed she first experienced jaw pain after the accident, her dentist, in his deposition, attributed this pain to a preexisting degenerative condition. He found nothing in the jaw x-rays suggesting that the pain resulted from a traumatic injury.

Keller's medical bills further support Allstate's $8,000 settlement offer. Her medical bills totaled $3,270. Although the record does not contain an itemized account-

ing of her damages, a total settlement offer of $33,000 ($25,000 from the underinsured motorist's policy and $8,000 from Allstate) is not unreasonable, given the minor injuries reported in her medical records.

By contrast, as of June 1991, the date of the offer, there was little evidence suggesting that Keller's damages were greater than $33,000. Her own pretrial settlement offer suggests that she believed the value of her claim to be closer to Allstate's offer than to the amount awarded by the jury.

As the record contains reasonable justification for Allstate's settlement offer, it also was reasonable for the trial court to conclude that "Allstate did not act in bad faith." Consequently, the Kellers's CPA claim must fail.

## B

For the first time on appeal, the Kellers argue that Allstate acted in bad faith by failing to investigate and pay a valid insurance claim in a timely manner. *See* WAC 284-30-330(2), (3), (4), (6), (16); WAC 284-30-370, -380. As a party waives an issue by not raising it before the trial court, we refrain from reviewing this argument. *Lake v. Butcher*, 37 Wn. App. 228, 232, 679 P.2d 409, *review denied*, 102 Wn.2d 1020 (1984).

## II

The Kellers next argue that the trial court erred by ruling that they could not recover damages for "emotional distress or physical pain and suffering." As the Kellers have not established that Allstate acted in bad faith, we need not reach this issue.

## III

The Kellers also challenge the trial court's conclusion that the jury verdict in the underlying trial resulted from the "exceptional work by plaintiffs." However, the

determinative question was whether Allstate had "reasonable justification" for the $8,000 settlement offer. The trial record does not show, as a matter of law, that it did not. Thus, speculation about the jury's decision-making process is unnecessary. Even if the trial court's conclusion was erroneous, such error was harmless. *State ex rel. Carriger v. Campbell Food Mkts., Inc.*, 65 Wn.2d 600, 606-07, 398 P.2d 1016 (1965) (trial court finding immaterial to the issues in the case is harmless error).

Accordingly, we affirm.

MORGAN and BRIDGEWATER, JJ., concur.