FIREMAN'S FUND INSURANCE COMPANIES; Switzerland General Insurance Company; Continental Insurance Company; C.A.M.A.T.; Samvirke Insurance; Highlands Insurance; New York Marine & General Insurance Company; Lloyd's of New York; Royal Insurance Company of America; Great American Insurance Company; St. Paul Fire & Marine Insurance Company, Plaintiffs–Appellants–Cross–Appellees,

v.

ALASKAN PRIDE PARTNERSHIP, as Trustee; Key Bank, as Trustee; Christiania Bank of Seattle, Beneficiary, Defendants–Appellees–Cross–Appellants.

Nos. 95–35551, 95–35579.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Memorandum filed Jan. 6, 1997.

Decided Feb. 13, 1997.

Stanley L. Gibson, G. Geoffrey Robb, Derby, Cook, Quinby & Tweedt, San Francisco, California, for plaintiffs–appellants.

Douglas M. Fryer, Mikkelborg, Broz, Wells & Fryer, Seattle, Washington, for defendants–appellees.

Before: WRIGHT, BRUNETTI and O'SCANNLAIN, Circuit Judges.

## ORDER

The Memorandum disposition filed January 6, 1997, is redesignated as an authored Opinion by Judge Wright.

## OPINION

EUGENE A. WRIGHT, Circuit Judge.

Plaintiff Fireman's Fund ("Insurer") insured defendant Alaskan Pride Partnership's fishing vessel, the Alaskan Pride. The vessel sank in the Bering Sea in February 1993, after inexplicably taking on water. Insurer denied coverage for the loss and sued for a declaratory judgment that the loss was not covered, and the Partnership counterclaimed for coverage and for bad faith. The jury found for the Partnership on both claims, but neither party was able to establish a cause for the sinking.

On appeal, Insurer challenges several evidentiary rulings and jury instructions, and it argues that the jury could not have found bad faith because the cause of the sinking was unknown. The Partnership cross-appeals the court's denial of prejudgment interest at the contract rate. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Evidentiary Rulings

We review evidentiary rulings for abuse of discretion. *Masson v. New Yorker Magazine, Inc.,* 85 F.3d 1394, 1399 (9th Cir. 1996). Even upon a finding of abuse, reversal is warranted only if the error was prejudicial. *Id.;* Fed.R.Evid. 103(a).

### A. Testimony of David Holden

At trial, the Partnership presented testimony from David Holden, a claims manager for one of the subscribing underwriters on the policy. He testified that, in his opinion, the claim was "a legitimate loss" and that he "was very upset" about the denial of coverage. Insurer argues that this testimony: constituted improper lay opinion; lacked relevance; and was unduly prejudicial.[1]

---

1. Insurer's pretrial motion preserved its objections to Holden's testimony. Although it assumed that Holden would be called as an expert witness, it raised substantially the same issues that are raised here. Insurer did not waive the objection when it insisted that Holden be called only if the court admitted the fax, discussed *infra.* We will not penalize a party for its neces-

## 1. Lay Opinion

■ Lay opinion is admissible only if it is (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the testimony or a fact in issue. Fed. R.Evid. 701. Insurer has failed to show that Holden's testimony was not based on his own perception. There is no evidence that he relied on a report from "the Insurers."[2] Even if he did, his recollection that he believed the loss was legitimate was "his own perception." Presumably an underwriter develops an opinion about whether a loss should be paid based on all the evidence before him, including legal advice or other insurers' reports. Further, the court instructed him "not to give an opinion based on what he learned from someone else." Insurer does not show that Holden disregarded this instruction.

Insurer also fails to show that Holden's opinion was not "helpful." Lay opinion is appropriate when a witness cannot explain through factual testimony the combination of circumstances that led him to formulate that opinion. *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir.1982) (lay opinion may be admitted when it is "difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances ... which cannot be adequately described and presented with the force and clearness as they appeared to the witness"); *see also United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir.1992) (court should have permitted witnesses to give opinions as to how old statutory rape victim looked); *United States v. Young Buffalo*, 591 F.2d 506, 513 (9th Cir.) (witnesses could testify that photo of robbery suspect looked like defendant, even though jury could have made this comparison), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979).

Holden's testimony meets this standard. His reasons for treating the Partnership's claim as he did may well have been based on factors too numerous and complex to develop in trial testimony. In arguing that the opinion was not helpful, Insurer relies primarily on cases dealing with expert witnesses, which apply a different standard.

## 2. Relevance and Prejudice

■ Holden's opinion tended to make more probable the Partnership's allegation that Insurer denied its claim too hastily. It therefore was relevant under Rule 401. Rule 403 permits a court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." District courts enjoy "wide latitude" in applying this rule. *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir.1991).

That Holden's testimony embraced the ultimate issues of coverage and bad faith does not make it unduly prejudicial. *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir.1988).[3] Holden did not say that the policy provided coverage or that Insurer acted in bad faith. In fact, he refrained from using the term "bad faith" when invited to do so. And, the court instructed the jury: "The fact that any of the insurers on this risk paid their portion of the Policy is not to be considered by you as evidence on the issue of coverage." Insurer offers no evidence that the jury did not follow this instruction. Finally, Insurer cross-examined Holden about other reasons he might have had for paying the Partnership's claim, thus reducing the possibility of prejudice.

## B. Admission of Fax, Exhibit A–53

■ The Partnership also introduced a fax that Holden sent to Insurer's claims supervisor, Ed Thiemann, in which he called the denial of coverage "precipitous" and said that he doubted American courts would agree with Insurer's reasons for the denial. Like Holden's testimony, the fax represented information that Insurer might have considered before it decided to deny coverage and

---

sary alteration in trial strategy. Further, insurer renewed its objections when it examined Holden.

2. Insurer made a similar argument at trial, when counsel stated that Holden based his opinion on a legal memorandum. Holden denied this.

3. Testimony that simply tells the jury how to decide is not considered "helpful" as lay opinion. As discussed *infra*, Holden's testimony was helpful for other reasons.

showed how other insurers handled the Partnership's claim. It was probative on the bad faith issue. Moreover, Insurer failed to object to admission of a second fax from Holden, Exhibit A–137, which restated Holden's conviction that the claim should be paid. With Exhibit A–137 in evidence, Exhibit A–53 could not have prejudiced Insurer unduly.

## II. Jury Instructions

■ We review de novo whether the instructions misstated the law, *Masson v. New Yorker Magazine, Inc.,* 85 F.3d 1394, 1397 (9th Cir.1996), and review the formulation of the instructions for abuse of discretion, *Fikes v. Cleghorn,* 47 F.3d 1011, 1013 (9th Cir. 1995).

### A. Proposed Instruction No. 14

Instruction No. 14 provided that, under § 45 of the Norwegian Insurance Plan, Insurer bore the initial burden of proving that the vessel sprang a leak while afloat. If that was proven, the vessel would be presumed unseaworthy and the burden would shift to the Partnership to establish coverage. Insurer argues that these shifting burdens apply to the bad faith claim. It reasons that, once the burden of proving coverage had shifted to the Partnership, its duty to investigate the claim ended. It proposed language for Instruction No. 14 incorporating this theory, which the court rejected. Insurer's objection goes to the legal requirements of the bad faith claim, so review is de novo.

■ Norwegian law governs the policy and establishes the shifting burdens described in Instruction No. 14. Insurer's proposed language improperly attempted to apply Norwegian law to the bad faith claim by using the policy to define its duty to investigate. Washington law, however, governs bad faith. That is a tort, and its elements are defined by law, not by contract. *Safeco Ins. Co. v. Butler,* 118 Wash.2d 383, 392, 823 P.2d 499 (1992). Insurer has relied on Washington law in all its arguments relating to bad faith.

■ Even if the policy could define the duty to investigate, the proposed instruction would be improper. The policy incorporates Washington Administrative Code § 289–30–330. *See Keller v. Allstate Ins. Co.,* 81 Wash. App. 624, 632, 915 P.2d 1140 (1996). This provision imposes strict duties on insurers, including the duty to conduct a reasonable investigation. To the extent that the policy language conflicts with the code provision, it does not apply. As in any insurance case, the policy must be interpreted in favor of the insured. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.,* 124 Wash.2d 789, 799, 881 P.2d 1020 (1994). Therefore, Insurer's proposed language did not accurately reflect its duty to investigate under the policy.

### B. Instruction No. 25

Court's Instruction No. 25 provided that insurers "must conduct a reasonable investigation of a claim before denying coverage, and must have a *reasonable basis* for denying coverage.... An insurer does not have a *reasonable basis* for denying coverage when its denial is based on suspicion and conjecture." (Emphasis added). Insurer's argument that the instruction should have defined "reasonable basis" has been waived. Fed.R.Civ.P. 51. It did not object to Instruction No. 25 on this basis, nor did it propose a jury instruction defining this term. In fact, its proposed instructions 18 and 20 used the term "reasonable justification" without defining it.

### C. Proposed Instruction No. 27

Instruction No. 27 defined the elements of bad faith under Washington law as requiring, among other things, that "the injury to Alaskan Pride Partnership was proximately caused by the breach of plaintiffs' duty of good faith and fair dealing." The court elsewhere defined "proximate cause" as "that cause, which in a natural and continuous sequence, unbroken by any new, independent cause, causes the event, and without which that event would not have occurred." Court's Instruction No. 19.

■ Insurer argues that the court should have required the jury to find "that a more complete investigation would have uncovered facts which would have led the plaintiffs to

reconsider their denial of this claim."[4] This argument goes to the formulation of the instructions, which is reviewed for abuse of discretion. The court instructed the jury that it could find bad faith only if the injury (the economic loss caused by the denial of coverage) was proximately caused by the breach of duty (the failure to investigate). By using the definition of proximate cause in Instruction No. 19, the jury knew that the failure to investigate had to be the cause "without which the" injury "would not have occurred." Thus, the jury had sufficient information to apply the law in the way Insurer claims it should have been applied.

### III. Bad Faith

Insurer unsuccessfully moved for judgment as a matter of law on the ground that the jury could not have found bad faith because neither party was able to prove what caused the sinking.[5] We review de novo denial of this motion. *Oglesby v. Southern Pac. Transp. Co.,* 6 F.3d 603, 605 (9th Cir. 1993).

The finding of bad faith does not conflict with the failure to find a cause for the sinking. "We are bound to find the special verdicts consistent if we can do so under a fair reading of them." *Toner v. Lederle Laboratories,* 828 F.2d 510, 512 (9th Cir.1987), *cert. denied,* 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). The parties' inability at trial to prove what caused the sinking does not bear on the reasonableness of Insurer's conduct one and a half years earlier. The bad faith claim required the jury to determine whether Insurer's de-

nial of coverage was unreasonable when it occurred, not whether later developments could have vindicated the Insurer's decision. *Indus. Indem. Co. v. Kallevig,* 114 Wash.2d 907, 917, 792 P.2d 520 (1990); *Ins. Co. of Pennsylvania v. Highlands Ins. Co.,* 59 Wash.App. 782, 788, 801 P.2d 284 (1990).

Washington law permits a jury to find denial of coverage to be in bad faith even when the cause of loss is unclear. *Kallevig* establishes that a jury may find bad faith even if, at the time of the denial, the question of coverage appears debatable or even doubtful. While denial of coverage based on a debatable issue does not *alone* constitute bad faith, *Gould v. Mut. Life Ins. Co. of New York,* 735 F.2d 1165, 1167 (9th Cir.1984) (Washington law), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985), the fact that the issue is debatable does not preclude a finding of bad faith. An insurer may not fail to conduct a reasonable investigation simply because it appears initially that the loss is not covered.

Insurer's reliance on *Pace v. Ins. Co. of North America,* 838 F.2d 572 (1st Cir.1988), is misplaced. *Pace* applied Rhode Island law to hold that failure to conduct a reasonable investigation could not alone support a finding of bad faith. *Id.* at 584. That is not true of Washington law, 114 Wash.2d at 917, 792 P.2d 520, so *Pace* is not persuasive.[6]

### IV. Prejudgment Interest

The Partnership argues that the court erred by denying its motions to amend the judgment to add contractual interest and for reconsideration.[7] We review denial of

---

**4.** Insurer's general objection to the court's failure to accept its proposed jury instructions preserved this issue for appeal. A generalized objection suffices when the specific objections are framed by a proposed instruction. *See Katch v. Speidel Div. of Textron, Inc.,* 746 F.2d 1136, 1139 (6th Cir.1984).

**5.** Insurer does not challenge the sufficiency of the evidence. We therefore need not consider arguments relating to the sufficiency of the investigation or alleged delay by the Partnership in providing documents.

**6.** Rhode Island requires: "1) the absence of an objectively reasonable basis to deny, and 2) the

insurer's subjective knowledge or its reckless disregard of the absence of such basis." 838 F.2d at 584. The subjective component conflicts with the well-established rule in Washington that "conduct short of intentional bad faith or fraud" may constitute a breach of the duty of good faith. *Kallevig,* 114 Wash.2d at 916–17, 792 P.2d 520 (citing many cases for this proposition). Thus, *Pace*'s observation that bad faith "cannot" be unintentional simply does not apply here. 838 F.2d at 584.

**7.** The court initially awarded prejudgment interest at the federal rate, but then vacated its award and denied the Partnership's motion for interest at the contractual rate.

such motions for abuse of discretion. *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir.1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994); *Barber v. State of Hawai'i*, 42 F.3d 1185, 1198 (9th Cir.1994). We review de novo the trial court's legal and contractual interpretations. *Tracer Research v. Nat'l Environmental Svces. Co.*, 42 F.3d 1292, 1294 (9th Cir.1994), *cert. dismissed*, —— U.S. ——, 116 S.Ct. 37, 132 L.Ed.2d 917 (1995); *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180, 182 (9th Cir. 1993).

The court denied prejudgment interest for two reasons: the jury award for bad faith took into account the Partnership's loss of use of the money, so prejudgment interest would constitute double recovery; and a policy exception applied, barring interest when the insured fails to provide documents and particulars. We affirm on the first ground, and need not reach the second.[8]

■ The court instructed the jury that damages for bad faith must take into account all "[f]inancial losses" and "[d]amages to a going business" that result from the denial of coverage. Instruction No. 29. These damages would include loss of use of funds the Partnership would have received if the Insurer honored the claim. This is the same loss that prejudgment interest would have remedied.[9]

That the prejudgment interest award was mandatory under the policy does not bear upon the problem of double recovery. *Farm Credit Bank v. Tucker*, 62 Wash.App. 196, 813 P.2d 619 (1991), does not address double recovery; the prevailing party had not recovered damages for the loss of use of money. The same distinction applies to *Ins. Co. of North America v. Moore*, 783 F.2d 1326, 1327 (9th Cir.1986).

■ The Partnership argues that we must assume that the jury expected the court to award interest separately—in other words, that the jury discounted its award to present value. *See United States v. Doyle*, 786 F.2d 1440 (9th Cir.), *cert. denied*, 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986); *Columbia Brick Works*, 768 F.2d at 1066. This rule would apply if the jury had computed the coverage award. However, the award creating the double recovery problem is the bad faith award, which specifically compensated the Partnership for its lost funds. It is not logically possible to discount that award to its "present value." To the extent the jury award may not reflect the exact rate of contractual interest, defendants did not demonstrate good cause for failing to develop this argument before the amended judgment was entered.

## V. Attorneys' Fees

We deny the Partnership's request for attorneys' fees on appeal. *Olympic Steamship v. Centennial Ins.*, 117 Wash.2d 37, 811 P.2d 673 (1991), does not apply because the issue on appeal concerns bad faith rather than coverage. The Consumer Protection Act (CPA), RCW 19.86.090, does not apply. The jury was not instructed on the CPA, nor did the special verdict form address it. Even if it did apply, we would have discretion to award or to deny fees. RCW 19.86.020.

## CONCLUSION

We affirm the court's judgment in all respects and deny the Partnership's request for attorneys' fees.

**AFFIRMED.**

---

8. We apply state law to this issue, as the parties have not cited a preemptive federal rule on contractual prejudgment interest. *See Morrow Crane Co. v. Affiliated FM Ins. Co.*, 885 F.2d 612, 614 (9th Cir.1989). Even under federal law, however, we would affirm. Federal law leaves prejudgment interest to the trial court's discretion. *Columbia Brick Works, Inc. v. Royal Ins. Co. of Amer.*, 768 F.2d 1066, 1071 (9th Cir.1985). The court relied in part on its discretion, and if federal law preempts the state law supporting the claim for interest, the court could not have abused its discretion solely by declining to award interest.

9. The jury heard testimony from Daniel Leston, a CPA, who described the financial losses associated with the denial of coverage. He took into account the costs and delays associated with purchasing a new vessel, the projected earnings during the fishing season, and the profits of investing proceeds at applicable interest rates.