[No. 42617-6-I. Division One. April 12, 1999.]

NANCY ELLWEIN, ET AL., *Appellants*, v. HARTFORD ACCIDENT
AND INDEMNITY COMPANY, *Respondent*.

*Philip G. Arnold*; and *Simeon Osborn*, for appellants.

*Ogden Murphy Wallace, P.L.L.C.*, by *Christopher A. Washington* and *Geoffrey Julian Marshall Bridgman*, for respondent.

BAKER, J. — Nancy Ellwein was injured in an automobile accident. She prevailed at an underinsured motorist (UIM) arbitration hearing against Hartford Accident and Indemnity Company, and then sued Hartford for bad faith. After a trial that resulted in a hung jury, Hartford successfully moved for summary judgment dismissing Ellwein's claims. We agree that Ellwein has not made out a prima facie case of bad faith, and affirm.

I

In 1989, Nancy Ellwein was severely injured in an automobile accident. She turned left in front of Jason Gleason's speeding vehicle, was hit, and spent two months in the hospital, ten days of which she was in a coma. The collision took place in the middle of an intersection controlled by traffic lights, and eyewitnesses gave conflicting statements that the lights were either red or yellow as to both of the vehicles at the time of impact.

In connection with representing Ellwein against Gleason and third-party claimants, Hartford hired accident reconstruction expert William Cooper. Hartford also interviewed accident eyewitnesses Ken MacDougall and Larry Schultz. Cooper prepared a report based upon an inspection of the Ellwein vehicle, police reports, photographs of the accident, and a visit to the accident site. Cooper concluded that "although Mr. Gleason was there to be seen [by Ellwein], it is obvious he was exceeding the speed limit significantly, and probably failed to stop for a red traffic signal."

While the Gleason and third-party claims were pending, Ellwein's counsel wrote Hartford and stated:

Safeco has repaired the damage which Gleason did to Ken MacDougall's car. I suspect their subrogation department will ask *both* you (Hartford) and Allstate to pay or share in the

repair expense. On behalf of the Ellweins, I ask that you do not pay any portion or concede any liability. I do not want to jeopardize the Ellweins' claims *against Gleason*.

In response to Safeco's claim for contribution, Hartford blamed Gleason for the accident.

After Ellwein settled her claims with Gleason for $100,000, she demanded that Hartford pay the UIM policy limits. Three weeks later, Hartford replied:

As a matter of clarification, the policy limits available for underinsured motorist benefits is $1,000,000. At this time, we do not consider your client's claim to have a value of an equal amount but are currently evaluating her injury.

Ellwein demanded UIM arbitration, and Hartford filed a motion for summary judgment before the arbitrators, based in part on a revised version of Cooper's report. Hartford had provided Cooper with additional information he did not have at the time he prepared his original report, including statements from accident eyewitnesses Ken MacDougall and Larry Schultz, and a follow-up investigative report by police. In the revised report, Cooper blamed Ellwein for the accident.

After Hartford lost its summary judgment motion, it offered Ellwein $300,000 to settle her claim. Ellwein never communicated any settlement demand below the $1,000,000 policy limits. The only evidence to the contrary comes from the deposition of Michael Reilly, who represented Hartford at the UIM arbitration:

I called [Ellwein's attorney] Mr. Woodley up and we talked about the upcoming arbitration, indicated that I was wondering why he had never responded to our offer earlier, but that wasn't going to stop us, we would still try to resolve the case. He indicated, *Mr. Woodley did, that he thought the case was worth at least $800,000*, and my response was that viewing the information we had, it was my view that at best, he had a 50/50 chance on liability. . . .

Ellwein rejected Hartford's subsequent offer of $400,000 during arbitration.

Ellwein received $929,803.39 after the UIM arbitration hearing against Hartford (later reduced by the $100,000 received from Gleason's insurance carrier), and then sued Hartford for bad faith. Ellwein voluntarily dismissed that suit and did not refile it for over a year. Trial resulted in a hung jury. Before retrial, the court below ordered Ellwein to disclose her theories of liability, and Hartford moved for summary judgment dismissal of her claims under each theory of liability, namely:

1. Unfair offers (Hartford's settlement offers were unfair)

2. Cooper (Hartford hired accident reconstructionist William Cooper for Ellwein's benefit and later induced him to completely change his opinion, whereby he provided a revised accident reconstruction placing the sole blame on Ellwein)

3. Misled [Attorney] Gordon Woodley As To The UIM Policy Limits (Hartford told Woodley that UIM policy limits were $100,000 and not $1,000,000)

4. Refusal To Give [Attorney] Gordon Woodley Witness Statements (Hartford acted in bad faith by not providing Ellwein with statements it took from accident eyewitnesses MacDougall and Schultz)

5. Summary Judgment (Hartford should have withdrawn the summary judgment motion it filed with the arbitrators after Ellwein served Hartford's attorneys with her response)

6. Spoliation (Hartford destroyed the home office file in this case, which gives rise to an inference that this destruction of evidence was against the interest of Hartford and creates a presumption in favor of Ellwein as to each of the above theories)

Hartford's motion for summary judgment was granted as to all theories of liability, and Ellwein appeals.

## II

On appeal from a summary judgment order, this court engages in the same inquiry as the trial court, i.e., de

novo.[1] Summary judgment is appropriate only if reasonable persons could reach but one conclusion from the evidence, considering the facts in the light most favorable to the non-moving party.[2] Whether an insurer acted in bad faith is a question of fact.[3] As the moving party, Hartford bears the burden of showing that there is no material fact at issue with regard to whether it acted in bad faith.[4]

## III

 The purpose of UIM coverage is to place the insured in the same position as if a tortfeasor carried adequate liability insurance.[5] A UIM carrier stands in the shoes of the uninsured motorist to the extent of the carrier's policy limits.[6] Thus, a UIM insured is not entitled to be put in a better position by virtue of colliding with an uninsured or underinsured motorist than by colliding with a tortfeasor that carries adequate liability insurance.[7] A UIM carrier is not compelled to pay when the same recovery could not be obtained from the tortfeasor.[8]

 UIM coverage is subject to RCW 48.01.030, which provides:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.[9]

RCW 48.01.030 imposes a duty to act in good faith, and an

[1]*Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

[2]*Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395-96, 823 P.2d 499 (1992).

[3]*Butler*, 118 Wn.2d at 396.

[4]*Id.*

[5]*Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994).

[6]*Dayton*, 124 Wn.2d at 281.

[7]*Id.*

[8]*Id.*

[9]RCW 48.01.030; *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 632, 915 P.2d 1140 (1996).

insurer may violate that duty if it acts without reasonable justification.[10] An action for bad faith handling of an insurance claim sounds in tort, and harm is an essential element of such actions.[11]

The *Keller* court noted:

> The fact that the insurer is ultimately unsuccessful in its policy defense does not render the insurer liable for bad faith refusal to settle claims provided that the insurers['] actions were reasonable, and the insurer had probable cause to pursue its defense. Therefore, the insurer should not be held liable for extra-contractual damages where there is a legitimate controversy as to whether benefits are due or the amount of such benefits. . . .[12]

Ellwein concedes that a UIM carrier is entitled to pursue all defenses against the UIM claimant that could have been asserted by the tortfeasor.[13] Our inquiry thus focuses on whether, as a matter of law, Hartford was reasonably justified in its actions defending Ellwein's UIM claim.

■ Before addressing each of Ellwein's theories, a preliminary matter needs to be addressed. Ellwein claims that the court below erred in striking expert testimony from Dwayne Richards opining that Hartford put its interests ahead of its insured's interests. Specifically, she contends that the "Judge erred by failing to consider Mr. Richards' expert testimony rebutting the Motion for Summary Judgment, and striking his opinion that the insurance carrier failed to give equal consideration to the insured customers' interests." But the summary judgment order did not "strike" his testimony. The court below considered his testimony and correctly chose to disregard those portions

---

[10]*Keller,* 81 Wn. App. at 632; *Industrial Indem. Co. of the N.W., Inc. v. Kallevig,* 114 Wn.2d 907, 917, 792 P.2d 520 (1990).

[11]*Butler,* 118 Wn.2d at 389.

[12]*Keller,* 81 Wn. App. at 633 (quoting 15A George J. Couch, Couch Cyclopedia of Insurance Law § 58.1 (Ronald A. Anderson & Mark S. Rhodes eds., 2d ed., rev. vol. 1983)).

[13]*See Dayton,* 124 Wn.2d at 281 (UIM carrier not compelled to pay where same recovery could not have been obtained from tortfeasor).

which were not related to issues still present in this case or that set forth an incorrect legal standard for good faith behavior. Ellwein's claimed error is unfounded.

■ Ellwein's first theory of liability is that Hartford's settlement offers were unfair. Both parties have focused on the discrepancy between Hartford's settlement offers and the amounts ultimately recovered. But in determining whether Hartford's settlement offer violated that insurer's duty to act in good faith, a comparison of the offer to the amount ultimately recovered is not dispositive.[14] The facts and circumstances at the time the insurer made the offer should be considered.[15]

Here, it is undisputed that Ellwein made a left turn where there was no left turn signal which would give her the right-of-way. A driver making a left turn at an intersection must yield the right-of-way to any vehicle approaching from the opposite direction.[16] A driver turning left must yield to an oncoming vehicle, even if it can be shown that the oncoming vehicle was proceeding unlawfully.[17]

Cooper's first report stated that "although Mr. Gleason was there to be seen [by Ellwein], it is obvious he was exceeding the speed limit significantly, and probably failed to stop for a red traffic signal." Alternatively, the light might have been yellow at the time of the accident—eyewitnesses stated that the lights were red or yellow as to both of these vehicles at the time of impact. The logical implication of either scenario is that Ellwein was in the intersection and turning left at the time the light was either red or yellow.

---

[14]*Keller,* 81 Wn. App. at 632-33.

[15]*Keller,* 81 Wn. App. at 633.

[16]RCW 46.61.185.

[17]*Doherty v. Municipality of Metro. Seattle,* 83 Wn. App. 464, 470, 921 P.2d 1098 (1996) (citing *Mendelsohn v. Anderson,* 26 Wn. App. 933, 937, 614 P.2d 693 (1980) (excessive speed on the part of oncoming favored driver will not excuse disfavored driver's duty to yield); *State v. Carty,* 27 Wn. App. 715, 620 P.2d 137 (1980) (defendant who turned left into path of oncoming car guilty of failure to yield, even though oncoming car was speeding)).

Given these facts and circumstances, it was not unreasonable for Hartford to assume that Ellwein, as the disfavored driver, might be partially responsible for the accident in making their first offer. Hartford initially offered $300,000 to settle Ellwein's UIM claim, and increased that offer to $400,000 during arbitration. The record does not disclose that Ellwein ever made any counter demand, other than policy limits. Ellwein was successful at arbitration. She convinced the arbitrator that she was not comparatively negligent and recovered substantially more than Hartford's offer, albeit less than policy limits. But the arbitrator's later decisions do not mean that Hartford's negotiation efforts were unreasonable.

Ellwein's second theory of liability is that Hartford "misappropriated" her accident reconstructionist William Cooper when it employed him in the subsequent UIM proceedings. She also contends that Hartford "convinced" Cooper to change his opinion at that time.

Hartford hired Cooper. Cooper's report states that he was advised by Hartford that it "represented Ms. Ellwein in connection with a traffic collision." Hartford did not consider Ellwein to be a UIM claimant at that time.

An insurer risks a bad faith claim when it "commingles" information from tort defense and coverage actions.[18] In *Butler*, the insurer defended its insured under a reservation of rights as to its liability to provide coverage.[19] In such cases an insurer is under an "enhanced obligation" to its insured which arises, in part, due to the fact that confidential information is shared with both the insurer and the insured even though their interests may be adverse.[20] In reservation of rights cases, divergent interests can exist because an insured may be financially liable for a

[18]*Butler*, 118 Wn.2d at 395.

[19]*Id.*

[20]*Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 387-88, 715 P.2d 1133 (1986).

judgment where the insurer conducted the defense and subsequently does not provide coverage.[21]

The "enhanced obligation" considerations are not applicable here. The provision of UIM coverage is by nature adversarial and at arm's length.[22] An inevitable conflict exists between a UIM carrier and a UIM insured due to the unique nature of UIM coverage.[23] In either the first or second action, a conflict between an UIM insurer's and insured's interests may arise.[24] This case is an excellent example of such a conflict, because Hartford had an obligation to defend Ellwein in the first action but "stood in the shoes" of the tortfeasor in the second action by defending against her UIM claim.

Hartford did not dispute its obligation to defend Ellwein or provide coverage for claims against her by Gleason and third-party claimants. But it never became necessary for Hartford to retain counsel for Ellwein, and there is no evidence or contention that Ellwein's privately retained attorney, Woodley, shared confidential information with Hartford. Furthermore, a review of the record indicated that Woodley zealously protected Ellwein's rights vis-à-vis Gleason and third-party claimants as well as Hartford. Finally, Ellwein does not face the same risk as a reservation of rights insured that may be liable for a judgment because the insurer denies coverage. Hartford was not guilty of bad faith when it used Cooper during the arbitration.

Ellwein's argument that Cooper's opinion was revised in bad faith is also unsustainable. Hartford initially used Cooper's opinion to protect Ellwein's interests against Gleason and third-party claimants. Cooper's opinion was revised only after he was provided with additional information from witnesses and the police investigation. An expert

---

[21]*Tank*, 105 Wn.2d at 391.

[22]*Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 249, 961 P.2d 350 (1998).

[23]*Fisher*, 136 Wn.2d at 249.

[24]*Id.*

witness who modifies or alters previously stated opinions may well lose credibility in the process, but the facts here do not support a conclusion of bad faith by Hartford. Once Hartford "stood in the shoes" of the tortfeasor to defend against Ellwein's UIM claim, she should have expected that Hartford would employ an expert or take any other measures Gleason may have taken to defend against her claim. She should have expected to hire, and eventually did hire, her own expert for the UIM proceedings. Ellwein's second theory of liability also fails.

Ellwein's third theory of liability is that Hartford misled her attorney Woodley as to the UIM policy limits. WAC 284-30-350(1) does not allow an insurer to "fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." WAC 284-30--330(1) prohibits an insurer's "[m]isrepresenting pertinent facts or insurance policy provisions."

The facts of this case do not support a claimed violation of these provisions. The UIM policy limits were clearly stated on the policy issued to Ellwein's employer, Washington Federal Savings and Loan Association, who purchased the policy for the benefit of employees such as Ellwein who might be involved in collisions while on company business. There is no evidence that Ellwein or Woodley were denied access to the policy, or that Ellwein or Woodley ever asked for disclosure of the policy limits. The single reference in Woodley's affidavit that "Hartford" told him the limits were less is completely lacking in specificity as to who or when such a statement was made, or in what context. Ellwein has not raised a genuine issue of material fact as to her third theory of liability, and it thus fails.

Ellwein's fourth theory of liability is that Hartford refused to give Woodley witness statements it had obtained. After the accident, Hartford interviewed accident eyewitnesses Ken MacDougall and Larry Schultz. Woodley claims to have requested copies of these statements once before the UIM claim was made, and several times after the UIM claim was made.

■ The record does not disclose that any discovery procedures were employed by counsel; nor, for that matter, does the record contain any record of a request for or denial of such statements. In short, the record is completely insufficient to permit meaningful review of this claim.

■ Ellwein's fifth and final theory of liability is that Hartford should have withdrawn the summary judgment motion it filed with the arbitrators after she served Hartford's attorneys with her response. Ellwein did not brief this issue in opposing Hartford's summary judgment motion below or to this court. We need not, and will not, consider this argument.

Finally, after Ellwein dismissed her first bad faith suit, Hartford destroyed the home office file in this case. Hartford claims it is their policy to destroy such files once a case has been completed. Ellwein contends that because Hartford destroyed the file, she is entitled to an inference that evidence was destroyed which would have been adverse to Hartford and thus she is entitled to a presumption in her favor as to each of the above theories. Specifically, she contends that Hartford destroyed its analysis of her liability and damages, evidence that it asked Cooper to revise his opinion regarding her "contributory" negligence, and evidence about settlement offers and authority during the UIM proceedings.

Most of the information developed by Hartford was in the field office file which was provided to Ellwein. In any event, destruction of notes in a file after a suit has been dismissed does not establish a claim for spoliation.

After considering the facts in the light most favorable to Ellwein, we find that she has not set forth a claim that can survive Hartford's summary judgment motion. We thus affirm the trial court's summary judgment dismissal of her bad faith claim.

Affirmed.

BECKER and COX, JJ., concur.

Review granted at 139 Wn.2d 1008 (1999).